Good morning, your honors. My name is Carl Ogun. I'm procuring for Mr. Franklin. I thought I'd like to start by laying out exactly what happens here if the government's correct on the law. Mr. Franklin commits these two crimes just a week apart. He gets arrested for the second one right when the drugs are discovered and gets sentenced pretty much immediately in state court to 18 months in prison. He serves 18 months in prison, in state prison, while the government just sits on the other charge. Two years after the first crime and several months after he gets out... When you say the government there, do you mean the state or the federal government? Federal government. Two years after the first crime and several months after he gets out of state custody and starts putting his life together actually quite effectively, the federal government files a separate charge for the first crime. If the federal charge is filed even just one year after he starts serving the state sentence, the federal mandatory minimum includes the time he serves in state custody. But solely because the federal government waited two years and he's out, the state custody isn't included. Now, what might be the most natural reaction to that, which certainly was mine, is that just ain't fair. Well, once long ago when I made that argument in court... Well, I think the natural reaction might be your client has waived that argument in the plea agreement. Well, I don't think... Because that is what the waiver says. He has given up any right... If the government hasn't breached. No, that's not what it says. It says provided the court imposes a term, not the government, provided the court imposes a term that does not exceed the statutory minimum, your client abandons all challenges to his sentence. Now, the court did that. Well, that's part of the plea agreement, Your Honor, and the plea agreement appeal waiver provision is only effective or is not effective if the government breaches. Now, obviously, my ability to raise this argument on appeal depends on the first argument I make in my brief about the government having breached. I want to explore that just for a moment because the waiver says provided the court imposes a term that does not exceed the statutory minimum, which you all agree is 60 months, your client has waived. Now, the court did that. The court imposed the term. We agree it's 60 months. The issue, of course, is whether it includes a state custody or not. No, that's not the issue. The issue for waiver is did the court impose a sentence that exceeded the statutory minimum. There's no discussion in there about accounting for other sentences. So the court... Let me finish. The court imposed a 60-month sentence. I don't see how you have any basis to be here. Tell me, what am I missing? I mean, this is all about the court. The waiver provision turns on what the court did. The court lived up to the condition precedent of the validity of the waiver by imposing a term that was exactly equal to the statutory minimum. I do, by the way, want to save two minutes for rebuttal. I forgot to note that. The waiver appeal provision, though, Your Honor, is part of a plea agreement, not a plea agreement with the court, of course, but a plea agreement with the government. Have you got a copy of the waiver? Yeah, I have a copy of the plea agreement, Your Honor, yes. Yeah, right. Read it to us. All right. Well, I think it may... What does he waive? He waives his right to appeal. Well, let me... He does waive his right to appeal if the court imposes... I just want you to tell me what he waived, everything that he waived. He waived his right, Your Honor, to appeal if the court imposes a term. It's actually more than 60 months. If the court imposes a term of imprisonment of no more than the high end of the sentencing guidelines range corresponding to an offense level of 21 and the criminal history category calculated by the court. But, Your Honor, that is part of a plea agreement with the government. And under this court's case law, it is crystal clear that that waiver is ineffective if the government breaches the plea agreement. And the government did breach the plea agreement here. The government breached the plea agreement by saying, yes, we agree with the probation office that the base offense level is 26, when it promised in the plea agreement to agree that it was 24. I'm sorry, but the record is crystal clear, to use your words, that the government said the pre-sentence report was correct, but the government was sticking with its 24 recommendation. The government said that. What it said is, instead of going with a base offense level of 24, go with 26 and vary downward to 24. And that was an important difference for two reasons, Your Honor. First of all, as the Supreme Court has recognized, that starting point is important. The government was then able to go into court and say, well, gee, Your Honor, you're making a 24-month variance, not just a 10-month variance. So they made the variance sound bigger, which naturally makes the court less likely to give more. Second, that was the hook that let them argue for the extra two levels for the gun. If they had to agree it was 24, the only rational way to make that argument was by conceding the other drugs weren't relevant conduct, and that would have prevented them from making the two levels. Why is that a breach that allows your client to pursue this appeal? Because they promised they'd say base offense level 24, and instead they said base offense level 26 and varied it 24. And it made a difference for those two reasons. Now, remember, that may be arguably a technical construction, but the case law is clear that you strictly, the government has to strictly comply with plea agreements. Say we agree with you that that was a breach by the government. Why did it affect Franklin's substantial rights? It doesn't have, well, I don't think you're reviewing for plein air here, Your Honor. So how do you get past Puckett? Because Puckett simply reaffirmed what the rule was already in the Ninth Circuit. You're going lower and lower. I'm sorry. Sometimes I get excited. I mean. I apologize. No, that's all right. You still got your fire after 50 years.  But you've got me, Your Honor. And I do want to, I hope, get to the statutory interpretation issue, but I want to address Your Honor's question. I don't think that argument was anywhere, really, Your Honor. If you look at Gonzales, look at Puckett. So I understand Gonzales would help you if it still existed, but it seems to me that Puckett is clearly irreconcilable with Gonzales and many cases afterward. Cannell is a case from this court where the issue was just whether the violation of the plea agreement by the government would give you the right to appeal something else, just like what you're arguing here under Gonzales, and Cannell comes after and we just say under Puckett this has to be reviewed for plain error. I'm not sure how you get past. I'm at a little bit of a disadvantage because I haven't looked at Cannell. I think I disagree with your analysis of Cannell, Your Honor, but you don't have it in front of me. But let me go to Puckett. Puckett, the reason they granted cert in Puckett was there was a split in the circuits about whether you review a breach as a plea agreement for plain error or some more de novo type of review in the context of where that's the substantive claim on appeal. And the Ninth Circuit, Your Honor, was already on the plain error side of that split. But the whole discussion in Puckett about how the remedy isn't really the point. It's whether there was a breach at all. I mean, sorry, whether this was argued below that there was a breach at all. I just don't see how that whole way that Puckett looked at the question is reconcilable with Gonzales. Well, Gonzales is dealing with a wholly different issue, and Gonzales and Maldonado were in the Ninth Circuit law at the same time, and Maldonado was already applying a plain error standard in the substantive context. To go back to Your Honor's question if plain error somehow applied, it's sort of hard to fit in this context where you're not making a substantive breach argument. I mean, we're not arguing. Well, I think you'd have to say that the government's breach made a difference, and I just think that's difficult here where your client agreed with the PSR's approach, and it just makes it very hard to say why the government changing positions is the real problem here. But that's sort of why the analysis doesn't even fit, Your Honor, because if you're not asking for a substantive remedy for the breach, then to talk about prejudice from the breach doesn't make sense. And that's, I think, part of why Gonzales is a different context than the Puckett context. But isn't this why Puckett says you need to raise it below? So if your client had said, I think the government is breaching, they shouldn't be saying that the PSR is correct, then the government might say, oh, well, we changed our mind or something, and maybe it would have been clear in the district court whether it did make a difference what the government's position was. But if you're not asking the district court to do anything about it, then why bring it up with the district court? If it doesn't make a difference, then it doesn't make a difference. But it does make a difference in that if the government breaches under Gonzales, they're not allowed to claim the benefit of the waiver. I mean, that's what Gonzales says. It was what Gonzales said. I just don't know if it survives Puckett. And our later case law, including Connell. I can give you the site if you want to tell us something about it later. I couldn't distinguish it. It's 517 F. 3rd, 1172. I remember having seen that case. How would, you know, he was a well-behaved prisoner, right? There's no question. I think there's not, but there's certainly no question, Your Honor, that this, to use my original concepts, wasn't fair. And more than that, maybe I can get back to my stat. There's one particular statutory interpretation point here on the substantive issue that I'm not sure I highlighted well enough in my briefs, that as I thought about this case, really weighs so heavily in the favor of the defense interpretation here. Let's go, of course, the guiding principle for statutory interpretation is look at the language of the statute. Let me take, Your Honors, to the language of the statute. In Kiefer and Drake and Rivers, they're interpreting two sets of languages. Shelby imprisoned, the statute at issue in Kiefer and Drake, and Shelby sentenced, the statute at issue in Rivers and here. Now, I would grant you that the words shall be imprisoned and shall be sentenced, they could be read either way. They could be read to not count the time in state custody, and they could be read to count the time in state custody. But that ship's already sailed. The courts have already decided it includes the time in state custody for a discharge sentence. Given that interpretation. The lawyer in front of the district court argued for this sentence. He elected to have a higher sentence because he thought he was going to work something. I mean, this looks kind of like buyer's remorse to me more than anything else. But he also asked the court to, in his words, credit the state time against the 60 months. You've made a much better argument than he did, though, correct? Much better. That's true, but all you have to do is raise the issue. I mean, I'm doing this on appeal in the higher chamber and so on. But if I can get back to my point. Well, I think you wanted to save some time for rebuttal, and I think we may agree with you about this, but we have the waiver problem still. So why don't you save some time so that we can talk to the government and then hear from you back. How would the rule of lenity fit in here? I think the rule of lenity is one supporting principle for my statutory interpretation argument. But I think the language, and I'll say that for rebuttal if the court wants, the language supports it equally well once you already have the holding in Drake and Kiefer and Rivers. But the rule of lenity is certainly, I mention it in my papers, and it's certainly a strong supporting principle here, Your Honor. We'll still give you two minutes for rebuttal. Well, you know, the sentencing guidelines are an abomination. They've ruined the whole system for darn near 40 years. One of the greatest mistakes we ever made. As we turned all the power to decide what sentencing shall be to the prosecutor and took it away from the district judges. And we turned the probation people away from thinking about what they can do to rehabilitate someone or how they should be handled. And we used to have probation officers who were former priests, rabbis, social workers. We don't have those kind anymore. But we've got to figure out a way to get rid of the sentencing guidelines. I didn't think they'd last five years because we got rid of all the under-rotten systems we had in the past. And actually we had a pretty good system going while the sentencing guidelines were being hatched. I've told this to Judge Breyer in San Francisco. Terrible mistake. It's, you know, so many times the prosecutor would go to the defense lawyer, most of the time public defenders, and tell them, have your client come around and plead to this count here. Then we'll dismiss the other counts and we'll recommend this sentence to the judge. Now if you don't take that offer up in five days or in two days, whatever it is, we're going to come back with another indictment. We're going to add a few more counts. And then we'll tell you that if you'll enter a plea, that including the count we've added, we'll recommend to the judge, the court, that your sentence be limited to ten years. I mean, that's the way it worked. The government appreciates your comments, Judge Breyer. Maybe you'd better get another job. Good morning, and may it please the court, Karen Escalante on behalf of the United States. This is a unique case, as the district court recognized, in that at sentencing the government was the one that stood by the plea agreement and argued in support of the lower base offense level of 24, while defendant himself was the one who argued in support of the higher base offense level that the probation office had calculated in the PSR. But the government said that 26 was correct. Why didn't the government just stay silent about that? Because the government has a duty of candor to the court, Your Honor. What case says that the government has to take a legal position that is contrary to its agreement in the plea deal rather than correcting a fact? This is not a fact. This is a legal position about what offense? The government has a duty to provide complete and truthful information about facts and guidelines calculations, and the cases that say that from this circuit are Maldonado and Manzo. And the government was doing that when it was informing the court. So they talk about a fact, like a fact in the world that is incorrect, or like literally a math error, I believe. This is a position about how to interpret the prior conduct and what the offense level should be. Yes, they talk about a math error. Maldonado is directly on point, the government submits. As in that case, there was a mistake in calculating the appropriate base offense level based off of the number, the quantity of drugs that were at issue. I believe there the prosecutor had calculated a base offense level of 32. The PSR said actually a higher quantity of drugs was involved, and so the base offense level is 34. That's precisely what happened here. The relevant conduct provisions of Section 1B1.3 instruct the district court that it shall consider relevant conduct, if I may turn to this, that relevant conduct shall be determined with respect to offenses that must be grouped together on the basis of all acts and omissions committed by defendant that were part of the same course of conduct or common scheme or plan as the offense of conviction. In the plea agreement, let me just jump in. I'm sorry? In the plea agreement, paragraph 14 is the paragraph that I see that says the defendant and the U.S. attorney agree that the base offense level is 24. Is that right? Yes, that's correct. Okay. Now, is there anywhere in here where the U.S. attorney's office agreed that they would advocate 24 or would only commit to 24, and if anybody on the other side, defendant, PSR, the court, said it should be 26, the U.S. attorney would say no. We've promised the defendant we're sticking with 24. This says they agree to it, but I don't see anything in the plea agreement, to your point, I think, that says the government will be an advocate for 24. The government does agree, and this is at paragraph 3F of the plea agreement, which is at page 48 of the executive record, that it will recommend that defendant be sentenced to a term of imprisonment that is no higher than the low end of the applicable sentencing guidelines range. And it goes on to clarify that provided the offense level used by the court is a certain offense level or the statutory mandatory minimum sentence, whichever is higher. And so when you're bringing up the government was totally consistent with that. I'm sorry? The government was completely consistent with that, wasn't it? Yes. The government's position is that it acted in accordance with the terms of the plea agreement. It provided truthful information, complete and accurate information about the correct sentencing guidelines calculations to the court. How is this not a legal argument about what conduct should be considered rather than a correction of math or a correction of a fact in the world? Again, it's not a legal argument because the sentencing guidelines at section 1B1.3A2 instruct the district court about how it's supposed to calculate the total base offense level plus specific offense characteristics. And as defendant himself concedes, in his reply at page 4, there are two facts in this case that could not be disputed. Defendant sold 32.5 grams of crack cocaine on January 8th, and he possessed 103 grams of crack cocaine on January 15th. But isn't it a legal question whether those should both be considered for this prosecution? I understand the question, Your Honor, but the examples provided in Application Note 5 are directly on point. And those examples instruct the court that when you have drug quantities like this at issue, a defendant doesn't need to be convicted of both of those offenses. And the guidelines instruct that you need to aggregate those drug quantities. And so when you have direct examples on point in the sentencing guidelines, the government felt that it could not with a straight face tell the court that, no, no, Your Honor, the correct guidelines calculations are 24 because that wasn't the case. Why 24 in the plea agreement? Because it was a mistake, Your Honor. And mistakes happen, as Maldonado and Monzo make clear. And the question is how you deal with those mistakes. But the government owned the mistake, so to speak, right? Yes. I mean, it stuck with the 24. It stuck with the 24. And what's so bizarre about this case is that it was defendant who actually recognized that, yes, he agreed with the PSR's calculations, and he recognized that by doing so he would receive a benefit. The benefit to him was that he would receive credit for the 18 months that he had served on the related state sentence. Why did the government prosecute him for this? You know, he had already served time for basically these crimes. And he had, it seems, served the purposes of punishment. He had served time. He had rehabilitated himself. He was back in society doing well. What caused the government to re-prosecute him for the same thing the state had already prosecuted him for, essentially? The reasons as to why the government prosecuted him for this conduct are not in the record. My understanding of why the government prosecuted him is because the government felt that what he had received in state court was not enough. He seemed to have gotten out quite early. It was enough to rehabilitate him, wasn't it? It looks like he was making some good progress, yes, between the time that he was released from his state sentence and the time that he was picked up on the federal charges. Before we had the sentencing guidelines, the increase in the federal prison population more than doubled, hasn't it? I don't know the answer to that, Your Honor. Well, I mean, I've read it. Somebody tweeted that to me. No, it has more than doubled. Now we're working on the concept of privatizing the system. It does seem that the reason he ended up in this very odd position of having to argue for a higher level is because he was in a situation where he wanted to get credit for serving time for basically the same crime that he was being prosecuted for again, which the unfairness here seems to have happened, in my mind, at many levels here. It's unclear to me why this prosecution was delayed and then happened in a way that put him in the position of then needing to argue for the time he'd already served for this whole crime that you're saying is a related conduct so it was the same crime. Yes, as far as the delay, my understanding, this is not in the record, is that this was part of a larger investigation involving a larger gang case. But didn't his lawyer kind of blow it in front of the district court? You know, I can't speak to what his lawyer did or did not do correctly, whether or not his lawyer blew it. All I will say is that he was sentenced to the mandatory minimum term of 60 months that clearly fell within the appellate waiver, and pursuant to the terms of the appellate waiver, his appeal should be dismissed. You're talking with your opponent about this turns on what the court does, but if you read it literally, the government could breach each and every clause of this agreement so long as the punchline was 60 months imposed by the court. Now, is that the government's position? In other words, so long as the court does 60 months, you weren't really bound by anything in this agreement? No, that is not the government's position. Why not? Why isn't that the government's position? That's a fair reading of the waiver clause in 19. Why would you give that up? The waiver is contingent entirely. The condition precedent is what the court does. Why is the government in any way constrained? How would they be triggering, how would they be waiving the waiver if the court ultimately hits 60 months, which is the statutory minimum? I understand what you're saying, Your Honor, and that is one way to read that appellate waiver position, that so long as the district court imposed a sentence of 60 months, the defendant waived his right to appeal. Regardless, the government's position here is that it did not breach the plea agreement. It did what it was instructed to do by Maldonado and Monzo in that it provided truthful information, accurate information about the correct sentencing guidelines calculations. The district court did what it was supposed to, which was it was supposed to calculate the correct guidelines calculations that's pursuant to statute and under this court's precedent, U.S. v. Carty. The starting points are always the guidelines. And then from that guidelines calculations of 84 to 105 months, the district court granted the defendant full credit of 18 months for the time that he had previously served in state custody. That brought him down to 66 months, and the court went one step further. It then, under 3553A factors, imposed a downward variance of 6 months, which is how it got to the 60-month sentence that it ultimately imposed here. But it may have believed it couldn't go below 60 months, right? That's because it had no authority to go below 60 months. If it's a statutory minimum, it can only go below if there's a section 3553E motion, which was not the case. Is that right? Correct. 3553E or 3553F motion. And neither motion was made. Exactly, because defendant neither provided... Yes, Your Honor. Unless the court has further questions, the government would submit. Thank you. Well, you're a good advocate. I don't know about this other guy. I'm afraid I'm going to try to squeeze too many things into whatever time Your Honors will give me. Can you address whether the district court could have gone below 60 months? Yes. Let me go back to that statutory interpretation point. It struck me it's almost... I was a statistics major in college. It's almost what they call conditional probability. It is very... You could go either way on the question of whether the words shall be imprisoned or shall be sentenced include time in state custody on another related conduct. But once you've reached the conclusion that they do for discharge sentences, just looking at the plain language of the statute, shall be imprisoned, shall be sentenced, there's absolutely no way to read in a distinction between discharged sentences and undischarged sentences. So given the holding that we now have in Kiefer, Drake, and Rivers, there is just no logical way to draw the distinction the government wants you to draw. Which also gets back to when this prosecution began. Correct. Your Honor asked why did the government prosecute this. I think the even more troubling question or equally troubling question is why did they wait two years to do it until he was already out of custody. I did want to... And if they had done it sooner, then under these cases if they apply, they could have gone below 60 months. It would have been a no-brainer. The judge could have given him concurrent time minus and subtracted from the 60 months whatever he'd already served at the time she sentenced him. I did want to address a couple more points about the waiver. First of all, I think Your Honor really was hitting it on the head with the distinction between the Maldonado and Montague case. I don't know if Your Honors have looked at the guidelines. I'm sure Judge Donato has. Each and every day. But when you do these drug calculations, you've got to do this really crazy math where you, I don't remember which way it is now, but you used to have to convert everything from methamphetamine into marijuana and two different types of drugs. You had to do the heroin multiplication and then the methameth. That's the kind of error there was in Maldonado. Someone just didn't do the math right. That's not what we have here. What we have here is a question of law applied to fact about whether this was, quote, the same course of conduct, unquote. The government had second. Maybe they did make a mistake and didn't think about that issue, but they had the obligation as advocates to come in and make this argument. This gets to your question. Wait. They didn't have the obligation, is your argument, right? They didn't have to correct this legal position. That's how they get to the breach, right? Other than that, they had an obligation to advocate the 24, which I think goes to Judge, you asked where in the plea agreement, you pointed out that they agreed to 24. Where in the plea agreement did they agree to advocate that? Your Honor, if you look at paragraph 3B at Excerpt of Record 46, it doesn't use the word advocate, but it says they will, quote, abide by all agreements regarding sentencing contained in this agreement. I think strictly construed in favor of the defense, that means they've got to say to the court, no, it's 24, a base offense level of 24, not a variance to 24, and a base offense level of 26 that then lets them add the two levels for the gun. So that, Your Honor, is where I think they are. Well, where I'm getting hung up is both sides are going to spend days arguing all this to the district court, but as long as the district court says I'm throwing both of you out and I don't understand what either of you are saying, I'm going with 60 months, the statutory minimum, I don't see how you have a grounds to be here. That's the next point I wanted to get to here in my notes, Your Honor. So in other words, everybody could talk all day, but as long as the punchline was 60 months, you're done. But the waiver of appeal, and this I think is established by lots of cases in this court and other courts, the waiver of appeal is part of a contract, a plea agreement with the government, not with the court, but with the government. It is Hornbook contracts law that if a party breaches a contract, they're not allowed to claim the benefits of the contract. So the government can't claim the benefits of the appeal waiver and enforce it if they breach the plea agreement. So that's why I'm spending all this time arguing about there being a government breach. But that doesn't fit the plain language of paragraph 19. No, it doesn't, but the plain language of paragraph 19 is out the window because it's part of a contract that the government breached, and the government can't use a contract they breached. If the government breaches a contract, it gets torn up. No, if it materially breaches the contract. There is the doctrine of immaterial breach, which does not relieve the other party of its performance. Except the case law, and I think I cite this in reference to this in my brief, it's not strict contract law necessarily because you're dealing with a defendant's constitutional rights, and the cases require, quote, strict compliance, unquote, from the government. So I'm not sure there is this materiality, and even if there is, Your Honor, it was material here for two reasons. It was material because it made the starting point higher. So the district court was sitting there thinking it varied by 24 months, which sounds like a lot more than 10 months. So psychologically, it may not have cared a lot about going less. And second, it was material because it was making that argument. It was saying the base defense level was 26 that let them argue for the gun enhancement that added two levels. So it was material in that way, too. Your Honor asked, well, you know, how is the plein air concept here? For the reasons I've articulated, I don't think you can find Gonzales clearly irreconcilable and throw it out the window. But even if you could, I'd suggest the proper plein air analysis is this. Is the air obvious? I think it is obvious. It is crystal clear that the government didn't argue 24, but argued 26 with a variance to 24. Your Honor then asked about prejudice. I would submit that in this context, where you're not seeking an actual substantive remedy for the breach, that the last two prongs, or at least the one about prejudice in the plein air standard, doesn't apply because it doesn't make sense. If I'm not asking for relief because of the breach, it doesn't make sense to look for prejudice. Do you have any case that applies plein air in this way to a breach? Just Gonzales. And I don't think there's certainly no court that's stronger. In fact, I'm 90% sure Canals doesn't say anything about Gonzales. I will go back and look at it, Your Honor. It does apply Puckett, though, to a breach afterward and talks about substantial rights. So I think it's a problem for your position. The only question is whether that defendant was not seeking any remedy or relief for the breach. And he wasn't. Then it's inconsistent with Gonzales, and you have that problem. And it's inconsistent with Gonzales without addressing it, apparently. The fourth prong of plein air, and does it affect the integrity of the process and things like that, that actually, I think, is really implicated here. When a government breaches a plea agreement, I don't think there's any question that implicates the integrity of the process in spade. Thank you, both sides, for the very helpful arguments in this case. The case is submitted, and we're adjourned for the day.
judges: Pregerson, Friedland, Donato